1  DEBRA W. YANG
   United States Attorney
2  STEVEN D. CLYMER
   Special Assistant United States Attorney
3  Chief, Criminal Division
   JAMES M. AQUILINA
4  Assistant United States Attorney
   California Bar Number: 177108
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-6875
7       Facsimile: (213) 894-8061

8  Attorney for Plaintiff
   United States of America

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,      )  CR No. 04-704(B)
                                   )
13                   Plaintiff,    )  PLEA AGREEMENT FOR DEFENDANT
                                   )  PAUL GARRETT ASHLEY
14            v.                   )
                                   )
15  PAUL GARRETT ASHLEY,           )
                                   )
16                   Defendant.    )
                                   )
17  _____   )

18

19      1.  This constitutes the plea agreement between PAUL GARRETT

20  ASHLEY ("defendant") and the United States Attorney's Office for

21  the Central District of California ("the USAO") in the above-

22  captioned case.  This agreement is limited to the USAO and cannot

23  bind any other federal, state or local prosecuting,

24  administrative or regulatory authorities.

25                            PLEA

26      2.  Defendant gives up the right to indictment by a grand

27  jury and agrees to plead guilty to a four-count information in

28  the form attached to this agreement or a substantially similar

1  form, charging defendant with conspiracy, in violation of 18

2  U.S.C. § 371, and aiding and abetting the transmission of a

3  program, code, information or command and intentionally causing

4  damage to a protected computer, in violation of 18 U.S.C.

5  §§ 1030(a)(5)(A)(i) and 2.

6                     NATURE OF THE OFFENSE

7      3.  In order for defendant to be guilty of conspiracy in

8  violation of 18 U.S.C. § 371, as charged in counts one and three

9  of the information, the following must be true:

10         a.  Beginning on an unknown date, and ending in or

11  about February 2004, there was an agreement between two or more

12  persons to knowingly cause the transmission of a program,

13  information, code or command to a protected computer;

14         b.  Defendant became a member of the conspiracy

15  knowing of at least one of its objects and intending to help

16  accomplish it; and

17         c.  One of the members of the conspiracy performed at

18  least one overt act for the purpose of carrying out the

19  conspiracy.

20      4.  In order for defendant to be guilty of aiding and

21  abetting the transmission of a program, code, information or

22  command and intentionally causing damage to a protected computer

23  in violation of 18 U.S.C. §§ 1030(a)(5)(A)(i) and 2, as charged

24  in counts two and four of the information, the following must be

25  true: (1) a co-defendant knowingly caused the transmission of a

26  program, information, code, or command to a computer; (2) as a

27  result of the transmission, the co-defendant intentionally

28  impaired the integrity or availability of data, a program, a

                              2

1   system or information without authorization; (3) the impairment

2   of the data, a program, a system or information resulted in

3   losses to one or more individuals totaling at least $5,000 in

4   value at any time during a one-year period; (4) the impaired

5   computer was used in interstate or foreign commerce or

6   communication; (5) defendant knowingly and intentionally aided,

7   counseled, commanded, induced or procured the co-defendant

8   to commit the crime; and (6) defendant acted before the crime was

9   completed.

10      5.   Defendant, as a member of the conspiracy charged in

11  counts one and three of the information, also may be guilty of

12  counts two and four if, by on or about February 2004, another

13  member of the conspiracy, during the course of and in furtherance

14  of the conspiracy, and as reasonably could have been foreseen to

15  defendant to be a necessary or natural consequence of the

16  conspiracy, knowingly caused the transmission of a program,

17  information, code, or command to a computer; (2) as a result of

18  the transmission, the co-defendant intentionally impaired the

19  integrity or availability of data, a program, a system or

20  information without authorization; (3) the impairment of the

21  data, a program, a system or information resulted in losses to

22  one or more individuals totaling at least $5,000 in value at any

23  time during a one-year period; and (4) the impaired computer was

24  used in interstate or foreign commerce or communication.

25      6.   Defendant expressly and unequivocally admits that he,

26  in fact, committed the crimes charged in counts one through four

27  of the information, and is, in fact, guilty of those offenses.

28  //

3

PENALTIES AND RESTITUTION

7. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, as charged in counts one and three of the information, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $ 100.

8. The statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1030(a)(5)(A)(i), as charged in counts two and four, is: ten years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Accordingly, the total statutory maximum sentence that the Court can impose for the counts set forth in the information is: thirty years imprisonment; a three-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

10. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater

4

1  than the statutory maximum stated above.

2      11.  Defendant understands that defendant will be required
3  to pay full restitution to the victims of the offenses.
4  Defendant agrees that, in return for the USAO's compliance with
5  its obligations under this agreement, the amount of restitution
6  is not restricted to the amounts alleged in the counts to which
7  defendant is pleading guilty and may include losses arising from
8  charges not prosecuted pursuant to this agreement as well as all
9  relevant conduct in connection with those charges.  The parties
10  currently believe that the applicable amount of restitution is at
11  least approximately $300,000 excluding lost revenue to the victim
12  companies, but recognize and agree that this amount could change
13  based on facts that come to the attention of the parties prior to
14  sentencing.  Defendant further agrees that defendant will not
15  seek the discharge of any restitution obligation, in whole or in
16  part, in any present or future bankruptcy proceeding.

17      12.  Defendant also understands that, by pleading guilty,
18  defendant may be giving up valuable government benefits and
19  valuable civic rights, such as the right to vote, the right to
20  possess a firearm, the right to hold office, and the right to
21  serve on a jury.

22      13.  Defendant further understands that the conviction in
23  this case may subject defendant to various collateral
24  consequences, including but not limited to, deportation,
25  revocation of probation, parole, or supervised release in another
26  case, and suspension or revocation of a professional license.
27  Defendant understands that unanticipated collateral consequences
28  will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

14.  Defendant and the USAO agree and stipulate to the statement of facts provided below.  This statement of facts includes facts sufficient to support pleas of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 17 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Beginning in or about January 1997, defendant PAUL GARRETT ASHLEY was the founder, owner, and computer systems administrator of Creative Internet Techniques ("CIT"), an Internet Service Provider based in Powell, Ohio.  CIT ran a network known as "Foonet," which provided for its customers computer servers and bandwidth for access to the Internet.  Customers used Foonet's system to run a variety of computer services, including Internet Relay Chat ("IRC") and web servers. Foonet was particularly well-known in the Internet community for providing its customers with protection against Distributed Denial of Service Attacks ("DDCS" attacks).  A DDOS is a type of malicious computer activity by which an attacker causes a network of computers to "flood" a victim computer with large amounts of data or specific computer commands.  A DDOS attack typically renders the victim computer unable to handle legitimate network traffic and often the network will be unable to perform its intended function.

In December 2003, ASHLEY sold CIT to one of his CIT clients, Jay Echouafni, the owner and Chief Executive Officer of Orbit Communication Corporation ("Orbit"), a Massachusetts corporation based in Sudbury, Massachusetts.  Orbit provided DirecTV home

6

satellite systems to customers through its website, www.orbitsat.com, and its sales department. Echouafni retained ASHLEY as the network administrator of CIT after December 2003.

While operating Foonet, ASHLEY received a number of complaints from other system administrators about DDOS attacks and other malicious activity emanating from computers within the Foonet network or perpetrated by individuals using Foonet services in some respect. Indeed, ASHLEY knowingly had allowed certain clients or employees, including Jonathan Hall in Louisiana, Joshua Schichtel in Arizona, and Lee Walker in the United Kingdom, to use the Foonet server to create "botnets," or networks of compromised or infected computers used to control or attack other computer systems. ASHLEY knew that an Internet worm called an "Agobot" had been used to infect the computers comprising the botnets controlled by some of his clients through IRC control channels located on Foonet.

From October 2003 through February 2004, ASHLEY aided and abetted the launching of distributed denial of service ("DDOS") attacks against the computers and web sites of Weaknees.com, ("Weaknees"), an online business based in Los Angeles, California; RapidSatellite.Com ("Rapid"), an online business based in Miami, Florida; and ExpertSatellite.com, ("Expert"), a satellite system competitor located in Worcester, Massachusetts. All three of these businesses were competitors of Orbit, the corporation owned by ASHLEY's CIT client, Echouafni. Echouafni asked ASHLEY to coordinate and execute the DDOS attacks. Ashley then directed CIT clients or employees to launch the attacks as requested. ASHLEY received compensation for his role, some of which he passed on to others involved in the attacks.

7

Specifically, from on or about October 6, 2003 through on or about November 14, 2003, Echouafni instructed ASHLEY to launch DDOS attacks against Weaknees and Rapid, so that their web sites would be unavailable to legitimate customers on the Internet. ASHLEY then contacted Hall, Schichtel, Walker and others to use their botnets controlled through IRC channels on Foonet servers to flood on several occasions the web servers used by Weaknees and Rapid, as well as the domain name servers used by the companies that hosted their web sites. ASHLEY coordinated the attacks. On October 6, 2003, and again on October 10, 2003, ASHLEY received compensation from Echouafni.

As a result of the unlawful attacks, Weaknees and its web host incurred an aggregate of at least $105,000 in costs necessary to respond to the attacks, conduct damage assessments and restore the system. Rapid and its web host suffered an aggregate of at least $97,000 in costs necessary to respond to the attacks, conduct damage assessments and restore the system.

On or about February 5, 2004, ASHLEY was instructed by Echouafni to attack the website of Expert, another competitor of Orbit. ASHLEY then contacted others to use their botnets to flood the computers and website of Expert so that legitimate customers would be unable to access Expert's website on the Internet. The attacks continued repeatedly until February 12, 2004.

As a result of the unlawful attacks, Expert and its web host incurred an aggregate of at least $42,000 in costs necessary to respond to the attacks, conduct damage assessments and restore the system.

At all relevant times, the computers of Weaknees, Rapid, and Expert were used in interstate and foreign commerce and communication. In addition, defendant ASHLEY was aware that many of the DDOS attacks on Weaknees and Rapid Satellite were launched by Lee Walker from the United Kingdom. Finally, defendant ASHLEY knew that launching the DDOS attacks against Weaknees, Rapid Satellite, and Expert was illegal and would impair the integrity and availability of the computer systems.

## WAIVER OF CONSTITUTIONAL RIGHTS

15. By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the

9

1  charges, including the right to call witnesses and to subpoena
2  those witnesses to testify.

3         g) The right not to be compelled to testify, and, if
4  defendant chose not to testify or present evidence, to have that
5  choice not be used against defendant.

6      By pleading guilty, defendant also gives up any and all
7  rights to pursue any affirmative defenses, Fourth Amendment or
8  Fifth Amendment claims, and other pretrial motions that have been
9  filed or could be filed.

10                          SENTENCING FACTORS

11      16.  Defendant understands that the Court is required to
12  consider the United States Sentencing Guidelines ("U.S.S.G." or
13  "Sentencing Guidelines") among other factors in determining
14  defendant's sentence.  Defendant understands, however, that the
15  Sentencing Guidelines are only advisory, and that after
16  considering the Guidelines, the Court may be free to exercise its
17  discretion to impose any reasonable sentence up to the maximum
18  set by statute for the crimes of conviction.

19      17.  Defendant and the USAO agree and stipulate to the
20  following applicable sentencing guideline factors based upon the
21  November 5, 2003 Guidelines:

22      Base Offense
        Level          :   6    [U.S.S.G. § 2B1.1(a)(2)]
23
        Loss greater
24      than $200,000  :   12   [U.S.S.G. § 2B1.1(b)(1)(G)]
        (excluding
25      lost revenue)

26      Sophisticated
        Means          :   2    [U.S.S.G. § 2B1.1(b)(8)(C)]
27
        Computer
28      Intrusion      :   4    [U.S.S.G. § 2B1.1(b)(13)(A)(ii)]

                                10

| Manager/ | | |
| Supervisor Role: | 2 | [U.S.S.G. § 3B1.1(b)] |
| Multiple Counts: | 1 | [U.S.S.G. §§ 3D1.2, 3D1.4] |

Total Offense
Level:                27

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraphs 20 and 21) are met. Subject to paragraph 24, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures from the applicable Offense Level be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

    18.  There is no agreement as to defendant's criminal history or criminal history category.

                    AGREEMENT NOT BINDING ON COURT

    19.  The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and

11

1  collateral review that the Court's sentencing guidelines

2  calculations are not error, although each party agrees to

3  maintain its view that the calculations in paragraph 17 are

4  consistent with the facts of this case.

5                    DEFENDANT'S OBLIGATIONS

6        20.   Defendant agrees that he or she will:

7              a) Plead guilty as set forth in this agreement

8              b) Not knowingly and willfully fail to abide by all

9  sentencing stipulations contained in this agreement.

10             c) Not knowingly and willfully fail to: (i) appear as

11 ordered for all court appearances, (ii) surrender as ordered for

12 service of sentence, (iii) obey all conditions of any bond, and

13 (iv) obey any other ongoing court order in this matter.

14             d) Not commit any crime; however, offenses which would

15 be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are

16 not within the scope of this agreement.

17             e) Not knowingly and willfully fail to be truthful at

18 all times with Pretrial Services, the U.S. Probation Office, and

19 the Court.

20             f) Pay the applicable special assessments at or before

21 the time of sentencing unless defendant lacks the ability to pay.

22       21.   Defendant further agrees to cooperate fully with the

23 USAO, the Federal Bureau of Investigation, and, as directed by

24 the USAO, any other federal, state, local, or foreign law

25 enforcement agency.  This cooperation requires defendant to:

26             a)   Respond truthfully and completely to all questions

27 that may be put to defendant, whether in interviews, before a

28 grand jury, or at any trial or other court proceeding.

                              12

1    b)  Attend all meetings, grand jury sessions, trials

2 or other proceedings at which defendant's presence is requested

3 by the USAO or compelled by subpoena or court order.

4    c)  Produce voluntarily all documents, records, or

5 other tangible evidence relating to matters about which the USAO,

6 or its designee, inquires.

7    d)  Act, if requested by the USAO to do so by the

8 USAO, in an undercover capacity to the best of defendant's

9 ability in connection with criminal investigations by federal,

10 state, or local law enforcement authorities, in accordance with

11 the instructions of those law enforcement authorities. Defendant

12 agrees not to act undercover, tape record any conversations, or

13 gather any evidence unless expressly instructed or authorized to

14 do so by federal, state, or local law enforcement authorities.

15       THE USAO'S OBLIGATIONS

16  22.  If defendant complies fully with all defendant's

17 obligations under this agreement, the USAO agrees:

18    a) To abide by all sentencing stipulations contained in

19 this agreement.

20    b) To consent to the transfer of the case to the

21 Southern District of Ohio pursuant to Federal Rule of Criminal

22 Procedure 20.

23    c) At the time of sentencing, provided that defendant

24 demonstrates an acceptance of responsibility for the offenses up

25 to and including the time of sentencing, to recommend a two-level

26 reduction in the applicable sentencing guideline offense level,

27 pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

28 move for an additional one-level reduction if available under

1  that section. The USAO specifically reserves the right not to

2  recommend a reduction under U.S.S.G. § 3E1.1 if, at any time

3  between his execution of this Agreement and sentencing defendant:

4          (i) Fails to admit a complete factual basis for

5  the plea;

6          (ii) Fails to truthfully admit his conduct in the

7  offenses of conviction;

8          (iii) Falsely denies, or frivolously contests,

9  relevant conduct for which defendant is accountable under

10  U.S.S.G. § 1B1.3;

11          (iv) Fails to provide truthful information about

12  his financial status;

13          (v)  Gives false or misleading testimony in any

14  proceeding relating to the criminal conduct charged in this case

15  and any relevant conduct for which defendant is accountable under

16  U.S.S.G. § 1B1.3;

17          (vi) Engages in acts which form a basis for

18  finding that defendant has obstructed or impeded the

19  administration of justice under U.S.S.G. § 3C1.1;

20          (vii) Intentionally fails to appear in Court or

21  violates any condition of release;

22          (viii) commits a crime;

23          (ix) Transfers any asset protected under any

24  provision of this Agreement; or

25          (x) Attempts to withdraw his guilty plea.

26  Defendant expressly understands that, in addition to declining to

27  recommend an acceptance-of-responsibility adjustment, the USAO

28  may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if

14

1 | defendant obstructs justice after the date of this Agreement.

2 |         d) To recommend that defendant be sentenced at the low

3 | end of the applicable Sentencing Guidelines range provided that

4 | the total offense level as calculated by the Court is 24 or

5 | higher and provided that the Court does not depart downward in

6 | offense level or criminal history category (except pursuant to,

7 | and to the extent requested in, a motion by the USAO for a

8 | downward departure under U.S.S.G. § 5K1.1). Notwithstanding its

9 | agreement to recommend the low end of the Sentencing Guidelines

10 | range, the USAO is free to recommend any conditions of

11 | confinement, including imprisonment, if the total offense level

12 | falls within Zone B or C of the sentencing table.

13 |         e) Not to offer as evidence in its case-in-chief in

14 | the above-captioned case or any other prosecution that may be

15 | brought against defendant by the USAO, or in connection with any

16 | sentencing proceeding in any case that may be brought against

17 | defendant by the USAO, any statements made by defendant or

18 | documents, records, or tangible evidence provided by defendant

19 | pursuant to this agreement or the letter agreements previously

20 | entered into by the parties dated March 16, 2004 and June 15,

21 | 2004 ("the Letter Agreements"). Defendant agrees, however, that

22 | the USAO may use such statements, documents, records, and

23 | tangible evidence: (1) to obtain and pursue leads to other

24 | evidence, which evidence may be used for any purpose, including

25 | any prosecution of defendant, (2) to cross-examine defendant

26 | should defendant testify, or to rebut any evidence, argument or

27 | representations made by defendant or a witness called by

28 | defendant in any trial, sentencing hearing, or other court

15

1  proceeding, and (3) in any prosecution of defendant for false
2  statement, obstruction of justice, or perjury.

3      f)   Not to use any information provided by defendant
4  pursuant to this agreement or the Letter Agreements against
5  defendant at sentencing for the purpose of determining the
6  applicable guideline range, including the appropriateness of an
7  upward departure, and to recommend to the Court that such
8  information not be used in determining the point in the
9  Sentencing Guidelines range at which defendant should be
10  sentenced.  Defendant understands, however, that information
11  provided by defendant pursuant to this agreement or the Letter
12  Agreements will be disclosed to the probation office and the
13  Court, and that the Court may use this information for the
14  purposes set forth in U.S.S.G § 1B1.8(b).

15      g)   In connection with defendant's sentencing, to
16  bring to the Court's attention the nature and extent of
17  defendant's cooperation.

18      h)   If the USAO determines, in its exclusive judgment,
19  that defendant has both complied with his obligations under
20  paragraphs 20 and 21 above and provided substantial assistance to
21  law enforcement in the prosecution or investigation of another
22  ("substantial assistance"), to move the Court pursuant to
23  U.S.S.G. § 5K1.1 to impose a sentence below the sentencing range
24  otherwise dictated by the sentencing guidelines.

25  DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE
26      23.  Defendant understands the following:
27      a)   Any knowingly false or misleading statement by
28  defendant will subject defendant to prosecution for false

16

1 statement, obstruction of justice, and perjury and will

2 constitute a breach by defendant of this agreement.

3        b)   Nothing in this agreement requires the USAO or any

4 other prosecuting or law enforcement agency to accept any

5 cooperation or assistance that defendant may offer, or to use it

6 in any particular way.

7        c)   Defendant cannot withdraw defendant's guilty pleas

8 if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1

9 for a reduced sentence or if the USAO makes such a motion and the

10 Court does not grant it.

11        d)   At this time the USAO makes no agreement or

12 representation as to whether any cooperation that defendant has

13 provided or intends to provide constitutes substantial

14 assistance. The decision whether defendant has provided

15 substantial assistance rests solely within the discretion of the

16 USAO.

17        e)   The USAO's determination of whether defendant has

18 provided substantial assistance will not depend in any way on

19 whether the government prevails at any trial or court hearing in

20 which defendant testifies.

21 BREACH OF AGREEMENT

22    24. If defendant, at any time between the execution of this

23 agreement and the completion of defendant's cooperation pursuant

24 to the agreement or defendant's sentencing on a non-custodial

25 sentence or surrender for service on a custodial sentence,

26 whichever is later, knowingly violates or fails to perform any of

27 defendant's obligations under this agreement ("a breach"), the

28 USAO may declare this agreement breached. For example, if the

17

1  defendant knowingly in an interview, before a grand jury, or at
2  trial, falsely accuses another person of criminal conduct or
3  falsely minimizes his own role, or the role of another, in
4  criminal conduct, he will have breached this agreement.  If the
5  USAO declares this agreement breached, and the Court finds such a
6  breach to have occurred, defendant will not be able to withdraw
7  defendant's guilty pleas, and the USAO will be relieved of all of
8  its obligations under this agreement.  In particular:

9         a)   The USAO will no longer be bound by any agreements
10  concerning sentencing and will be free to seek any sentence up to
11  the statutory maximum for the crimes to which defendant has
12  pleaded guilty.

13        b)   The USAO will no longer be bound by any agreements
14  regarding criminal prosecution, and will be free to prosecute
15  defendant for any crime.

16        c)   The USAO will be free to prosecute defendant for
17  false statement, obstruction of justice, and perjury based on any
18  knowingly false or misleading statement by defendant.

19        d)   The USAO will no longer be bound by any agreement
20  regarding the use of statements, documents, records, tangible
21  evidence, or information provided by defendant, and will be free
22  to use any of those in any way in any investigation, prosecution,
23  or civil or administrative action.  Defendant will not be able to
24  assert either (1) that those statements, documents, records,
25  tangible evidence, or information were obtained in violation of
26  the Fifth Amendment privilege against compelled self-
27  incrimination, or (2) any claim under the United States
28  Constitution, any statute, Rule 11(f) of the Federal Rules of

1  Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or
2  any other federal rule, that statements, documents, records,
3  tangible evidence, or information provided by defendant before or
4  after the signing of this agreement, or any leads derived
5  therefrom, should be inadmissible.

6      25. Following a knowing and willful breach of this
7  agreement by defendant, should the USAO elect to pursue any
8  charge that was dismissed or not filed as a result of this
9  agreement, then:

10       a) Defendant agrees that any applicable statute of
11 limitations is tolled between the date of defendant's signing of
12 this agreement and the commencement of any such prosecution or
13 action.

14       b) Defendant gives up all defenses based on the statute
15 of limitations, any claim of preindictment delay, or any speedy
16 trial claim with respect to any such prosecution, except to the
17 extent that such defenses existed as of the date of defendant's
18 signing of this agreement.

19     LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK
20 DEFENDANT'S WAIVER

21     26. Defendant gives up the right to appeal any sentence
22 imposed by the Court, including any order of restitution, and the
23 manner in which the sentence is determined, provided that (a) the
24 sentence is within the statutory maximum specified above and is
25 constitutional, (b) the Court in determining the applicable
26 guideline range does not depart upward in offense level or
27 criminal history category, and determines that the total offense
28 level is 27 or below, and (c) the Court imposes a sentence within

1  or below the range corresponding to the determined total offense
2  level and criminal history category.  Defendant also gives up any
3  right to bring a post-conviction collateral attack on the
4  convictions or sentence, including any order of restitution,
5  except a post-conviction collateral attack based on a claim of
6  ineffective assistance of counsel, a claim of newly discovered
7  evidence, or a explicitly retroactive change in the applicable
8  Sentencing Guidelines, sentencing statutes, or statutes of
9  conviction.  Notwithstanding the foregoing, defendant retains the
10  ability to appeal the court's determination of defendant's
11  criminal history category and the conditions of supervised
12  release imposed by the court, with the exception of the
13  following: standard conditions set forth in district court
14  General Orders 318 and 01-05; the drug testing conditions
15  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and
16  drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and the
17  computer crimes conditions discussed in paragraphs 27 through 29.
18  COMPUTER CRIMES CONDITIONS
19      27.  Defendant shall not possess or use a device with access
20  to any online service at any location without the prior approval
21  of the Probation Officer.  This includes access through any
22  Internet service provider, bulletin board system, or any public
23  or private computer network system.  Further, defendant shall not
24  have another individual access the Internet on his behalf to
25  obtain files or information that he is restricted from accessing
26  himself, or accept restricted files or information from another
27  person;
28      28.  Defendant shall use only those computers, computer-

20

1  related devices, screen/user names, passwords, e-mail accounts,

2  and Internet Service Providers (ISPs) as approved by the

3  Probation Officer.  Computer and computer-related devices

4  include, but are not limited to, personal computers, personal

5  data assistants (PDAs), Internet appliances, electronic games,

6  and cellular telephones, as well as peripheral equipment, that

7  can access, or can be modified to access, the Internet,

8  electronic bulletin boards, other computers, or similar media.

9  Defendant shall use any approved computers only within the scope

10  of his employment.  Defendant shall not access a computer for any

11  other purposes.  Defendant shall immediately report any changes

12  in defendant's employment affecting defendant's access and/or use

13  of computers or the Internet, including e-mail;

14      29.  All computers, computer-related devices, computer

15  storage media, and peripheral equipment used by defendant shall

16  be subject to search and seizure, and subject to the installation

17  of search and/or monitoring software and/or hardware, including

18  unannounced seizure for the purpose of search.  Defendant shall

19  not add, remove, upgrade, update, reinstall, repair, or otherwise

20  modify the hardware or software on any computers, computer-

21  related devices, or their peripheral equipment without the prior

22  approval of the Probation Officer, nor shall defendant hide or

23  encrypt files or data.  Further, defendant shall, as requested by

24  the Probation Officer, provide all billing records, including

25  telephone, cable, Internet, satellite, and similar records.

26  GOVERNMENT'S WAIVER

27      30.  The USAO gives up its right to appeal the sentence,

28  provided that (a) the Court in determining the applicable

21

1   guideline range does not depart downward in offense level or
2   criminal history category (except by a downward departure in
3   offense level pursuant to, and to the extent requested by, the
4   USAO in a motion under U.S.S.G. § 5K1.1), (b) the Court
5   determines that the total offense level is 27 or above prior to
6   any departure under U.S.S.G. § 5K1.1, and (c) the Court imposes a
7   sentence within or above the range corresponding to the
8   determined total offense level (after any downward departure
9   under U.S.S.G. § 5K1.1) and criminal history category.

10                            COURT NOT A PARTY

11       31.  The Court is not a party to this agreement and need not
12   accept any of the USAO's sentencing recommendations or the
13   parties' stipulations.  Even if the Court ignores any sentencing
14   recommendation, finds facts or reaches conclusions different from
15   any stipulation, and/or imposes any sentence up to the maximum
16   established by statute, defendant cannot, for that reason,
17   withdraw defendant's guilty pleas, and defendant will remain
18   bound to fulfill all defendant's obligations under this
19   agreement.  No one - not the prosecutor, defendant's attorney, or
20   the Court - can make a binding prediction or promise regarding
21   the sentence defendant will receive, except that it will be
22   within the statutory maximum.

23                         NO ADDITIONAL AGREEMENTS

24       32.  Except as set forth herein, there are no promises,
25   understandings or agreements between the USAO and defendant or
26   defendant's counsel.  This agreement supersedes and replaces the
27   Letter Agreements.  Nor may any additional agreement,
28   understanding or condition be entered into unless in a writing

                                  22

1  signed by all parties or on the record in court.

2         PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

3      33.  The parties agree and stipulate that this Agreement

4  will be considered part of the record of defendant's guilty plea

5  hearing as if the entire Agreement had been read into the record

6  of the proceeding.

7      This agreement is effective upon signature by defendant and

8  an Assistant United States Attorney.

9  AGREED AND ACCEPTED

10  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

    DEBRA W. YANG

12  United States Attorney

13  _____    4/12/05

14  JAMES M. AQUILINA              Date
    Assistant United States Attorney

15

16      I have read this agreement and carefully discussed every

17  part of it with my attorney.  I understand the terms of this

18  agreement, and I voluntarily agree to those terms.  My attorney

19  has advised me of my rights, of possible defenses, of the

20  Sentencing Guideline provisions, and of the consequences of

21  entering into this agreement.  No promises or inducements have

22  been made to me other than those contained in this agreement.  No

23  one has threatened or forced me in any way to enter into this

24  agreement.  Finally, I am satisfied with the representation of my

25  attorney in this matter.

26  _____    4/7/05

27  PAUL GARRETT ASHLEY          Date
    Defendant

28