## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| *Plaintiff,* | \| |
| | \|   Case No. 05-CR-00190-01 |
| -vs- | \| |
| | \|   **JUDGE GRAHAM** |
| PAUL G. ASHLEY, | \| |
| *Defendant.* | \| |

### Defendant's Sentencing Memorandum

Mr. Ashley comes before the Court after pleading guilty to his participation in a scheme to facilitate computer fraud.  Mr. Ashley is aware that the Court has carefully reviewed the presentence report and is familiar with the facts of this case.  This sentencing memorandum, and the allocution that Mr. Ashley and counsel will make at sentencing, are not intended in any way to demean the seriousness of Mr. Ashley's conduct or to deny his culpability for his actions.  Rather, it is an attempt to set forth for the Court those facts that are relevant to determination of a just sentence in this case.

### Substantial Assistance

Counsel believes that Mr. Ashley has provided substantial assistance to the United States and anticipates that the United States will file a motion for downward departure under USSG § 5K1.1.  This memorandum is not intended to seek any other downward departure or adjustment from the advisory guidelines range.  Rather, it seeks to inform the Court's discretion regarding the statutory sentencing factors set forth in 18 USC § 3553.

## Statutory Guidance Regarding Sentencing

After *Booker*, the Court is required to look to the principles of sentencing set forth in 18 USC § 3553 to determine what sentence is most appropriate for this individual defendant.   In so doing, I would ask the Court to first note that Congress has expressed a policy in favor of a sentence that reflects the least restrictive alternative that is consistent with the sentencing statutes.  *18 USC § 3553(a)* (The court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph 2 of this subsection.).

Congress directs the Court to consider several factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment; (3) deterrence to criminal conduct (by others); (4) protect the public from further criminal conduct (by this defendant); and (5) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *18 USC § 3553((a)(1) — (2)*.  When the Court considers all of those factors the Court will conclude that Mr. Ashley need not serve the lengthy prison term calculated under the sentencing guidelines in order for the Court to remain true to the sentencing policy set forth by Congress in the statute.

## Naïve Defendant

Mr. Ashley stands before the Court with no prior criminal convictions and no prior criminal history.  While it is true that Mr. Ashley was arrested at age 19 in Palm Beach Gardens, Florida, that case was later dismissed for want of evidence.  Mr. Ashley has

led a law-abiding life for his entire adult life.  Consequently, Mr. Ashley was perhaps more susceptible to the overtures by Mr. Echouafni than others with greater experience in the criminal justice system.  The court is entitled to consider this factor as part of the "history and characteristics of the defendant."

### Defendant's Personal History & Background

Mr. Ashley is a 31-year old father of three children.  Mr. Ashley suffers from Tourett's Syndrome.  As a consequence of that illness, Mr. Ashley is plagued with involuntary movements.  He "fidgets" or has "twitches" that make him appear odd in the eyes of others.  Although medication helps to control these involuntary actions, the medication is not 100% effective and has undesirable side effects.   Stress aggravates his condition.

As the presentence report notes, Mr. Ashley was seen by Dr. Lori Berger, a Clinical Psychologist at Quantum Solutions Group.  Dr. Berger notes that Mr. Ashley is socially shy, introverted and insecure.  He prefers small groups to overly large ones and has a few close friends rather than several acquaintances. *Presentence Report, ¶ 63.*

Mr. Ashley is also under considerable stress.   Naturally, anyone who is a defendant in a felony criminal case would experience some stress, but Dr. Berger described the stress on Mr. Ashley as "considerable."  Dr. Berger recommended three things to help address the medical/psychological needs Mr. Ashley exhibits.  First, Dr. Berger recommended that Mr. Ashley undergo long-term individual psychotherapy. While there is an opportunity for that type of psychotherapy to occur within the prison environment, it would certainly be easier to obtain and maintain in a setting other than a prison.  Secondly, Dr. Berger recommended that Mr. Ashley's medication be more

closely regulated and periodically adjusted.  Again, that objective could be achieved in a non-prison environment.  Finally, Dr. Berger recommended that Mr. Ashley and his spouse enter into couple therapy.  The Bureau of prisons is not equipped to address this medical/psychological need identified by Dr. Berger.

The Court is entitled to consider these factors both as they relate to the "history and characteristics of the defendant" and as they relate to the need for the sentence imposed to "provide the defendant with needed * * * medical care * * in the most effective manner."  *See, 18 USC § 3553(a)(2)(D).*  Here it is important to note that Congress spoke about providing medical care in "the most effective manner" — not whether it was possible for that needed medical care to occur within the Bureau of Prisons.  Therefore, even if the BOP is capable of providing the needed care the Court may conclude that the care could most effectively be provided in the context of some alternative sentencing scheme, such as home confinement or split option.

### Education, Employment & Financial Support for Family

Dr. Berger noted that Mr. Ashley continues to work in the computer field despite the fact that his current legal problems flow directly from Mr. Ashley's connection to the computer field.  *See, Presentence Report, ¶ 64.*  This is an accurate statement, but Mr. Ashley wants the Court to consider the options available to him.

As the presentence report noted, Mr. Ashley dropped out of high school at the 11th grade, and later obtained a GED.  Mr. Ashley's Tourett's syndrome made it difficult for him to function in a typical school environment, although he does have the native intelligence to succeed academically.  The fact that Mr. Ashley was only marginally successful while taking classes at Santa Fe Community College in Gainesville, Florida

4

supports the assertion that he does not function well in a structured, full-time school environment. *See, Presentence Report, ¶ 68* (earned 1.91 GPA while attending community college on near full-time basis). On the other hand, Mr. Ashley does have the native intelligence to comprehend and learn, albeit under less stressful conditions than that of a full-time student. *See, Presentence Report, ¶ 67* (earned 3.0 GPA when taking a single class as Wright College in Chicago, Illinois).

There is, however, one subject area where Mr. Ashley has developed a valuable skill set and knowledge base, and that is in the narrow field of computer network administration. Despite Mr. Ashley's checkered educational background, he has maintained regular employment in the technology arena since 1998. *See, Presentence Report, ¶ 71 — 78.* Unlike those who have chosen a career of crime, Mr. Ashley has been employed and has supported his family all of his adult life.

The investigation of this case began several years ago. While the investigation was on-going Mr. Ashley has cooperated fully with the United States. Throughout the entire investigation period, the United States has known that Mr. Ashley continued to work in the technology field as that was the only skill set that he possessed that would allow him to pay for his own defense in this case and support his family. In fact, Counsel even called the lead FBI agent assigned to the case to make sure that the FBI was aware that Mr. Ashley was working in the technology area and to determine whether there were any law enforcement concerns about Mr. Ashley's current employer. There is no indication that Mr. Ashley had done anything in his employment during the time that this case has been pending that was even remotely illegal.

Mr. Ashley's skill and knowledge, while very narrow, is also very valuable.  There have been discussions about whether Mr. Ashley would be able to provide assistance to the FBI and other law enforcement agencies on an on-going basis once this case is resolved.  We mention these discussions not in the context of a traditional discussion of "substantial assistance to law enforcement" under USSG § 5K1.1, but rather as a measure of the unique level of knowledge, skill and experience Mr. Ashley has developed in a very narrow field.

Finally, we would ask the Court to take note of the fact that the plea agreement in Mr. Ashley's case contains the generic language that one would anticipate in computer crime cases — language to prohibit Mr. Ashley from having any contact with computers, the Internet, or networks.  *See, Presentence Report,* ¶ *10.*  Throughout the entire time period of the pre-indictment investigation, while indictments were pending, and while awaiting sentencing after the plea to the bill of information, Mr. Ashley has continued to work in the computer field with the full knowledge and acquiescence of the United States — and without any problems.

Mr. Ashley has used the only skills and experience available to him to continue to support himself and his family.  His continued employment in the computer field ought not be viewed negatively; rather, the past 24 months or so demonstrate that Mr. Ashley is capable of working in the computer field without violating the law.  All of this is relevant to the "history and characteristics of the defendant" as well as "the nature and circumstances of the offense."  *18 USC § 3553(a)(1).*

### Mr. Ashley Did Not Benefit From Criminal Conduct

Mr. Echouafni purchased Mr. Ashley's computer hosting network business in December of 2003 and Mr. Ashley became an employee.  Prior to the actual purchase and while the negotiations were ongoing, Mr. Echouafni told Mr. Ashley that Mr. Echouafni's web sites were "under attack."  At the time that these claims were made, Mr. Ashley took only cursory steps to verify the claim — he essentially took Mr. Echouafni at his word that the attacks were taking place and that Mr. Echouafni correctly identified the source of the attack.  For about a five-month period, Mr. Echouafni used Mr. Ashley to coordinate DDOS attacks. Mr. Ashley achieved no financial gain from these transactions.  Mr. Echouafni paid funds into Mr. Ashley's Pay Pal account and those funds were, in turn, forwarded to the others who actually committed the DDOS attacks. In fact, Mr. Ashley received $1,000.00 and forwarded $900.00 of that to Mr. Walker.  *See, Presentence Report, ¶ 28 — 30.*  The majority of the remaining $100.00 was consumed in Pay Pal account expenses associated with the transactions.

Mr. Ashley believed that he was responding to an illegal attack on a legitimate businessman: Mr. Echouafni.  That belief does not in any way excuse the illegal conduct that Mr. Ashley engaged in.  Mr. Ashley's belief is not offered to excuse his conduct, either morally or legally.  The Court should, however, consider Mr. Ashley's motivation when it determines what sentence would be appropriate so as not to demean the seriousness of Mr. Ashley's criminal conduct but still recognizes the difference between his motivation and that of Mr. Echouafni.  Furthermore, this information is relevant to the "nature and circumstances of the offense."  *See, 18 USC § 3553(a)(1) and (2)(A).*

7

## Single Course of Aberrant Behavior

The Guidelines recognize a possible downward departure for a single act of aberrant criminal behavior.  *See, USSG § 5K2.20.*  Mr. Ashley concedes that his conduct in this case was not "a single criminal transaction".  Likewise, the DDOS attacks could not be considered as criminal offenses that were committed "without significant planning."  Therefore, Mr. Ashley does not ask the Court to find that he is eligible for an adjustment under USSG § 5K2.20, because the facts do not support such an adjustment.  Nevertheless, the truth is that Mr. Ashley was merely a conduit for information and money between Mr. Echouafni and Mr. Walker.  When put in context of the actual scheme, Mr. Ashley was plainly among the least culpable.  However, the guidelines provisions are worded in such a way that when they are applied to Mr. Ashley he receives a role in the offense enhancement as well as being denied the aberrant behavior downward adjustment.  That mechanical application of the guidelines is accurate — so Mr. Ashley has no basis to complain that the probation officer did not exercise the mechanics of the guidelines properly — but is also paints an unfair picture of Mr. Ashley and his role in this offense.  Thus, we ask the court to consider the true nature of the relationship between the parties, the distinction between Mr. Ashley's lack of intent to profit from the criminal acts compared to the intent of Mr. Echouafni, and the distinction between Mr. Ashley's actions in this case versus the rest of his life.  When the Court considers all of those factors we believe that the Court will arrive at a just conclusion regarding Mr. Ashley's culpability in this case.  .  Furthermore, this information is relevant to the "nature and circumstances of the offense", a determination

of what sentence is necessary to avoid demeaning the seriousness of the offense, and the history and circumstances of the defendant. *See, 18 USC § 3553(a)(1) and (2)(A)*.

## Genuine Remorse & Unintended Consequences

Mr. Ashley has expressed his heartfelt and genuine remorse for his conduct. As indicated in the presentence report, the unintended consequences of Mr. Ashley's conduct have been enormous. First and foremost, the victims of this offense have a documented financial loss of nearly $300,000.00, and have suffered severe collateral consequences for which it is impossible to place a monetary value. Mr. Ashley truly regrets that these losses occurred and that he had any part in causing these losses to occur.

The unintended consequences for Mr. Ashley and his family have also been severe. Mr. Ashley had to abruptly change jobs and relocate his family to prepare for the very real possibility that this Court will impose a period of incarceration. Assuming that the court does impose a period of incarceration, Mr. Ashley's wife and children will be deprived of the income that he would generate to support the family. More importantly, because Mr. Ashley works from home he has been the primary caregiver for his children. If the Court concludes that a prison sentence is appropriate in this case the children will be deprived of that care, and Mrs. Ashley will have to make other arrangements for child care so that she can continue to work to support the family. In a very real sense, incarceration in this case visits the sins of the father on the children. The extent of Mr. Ashley's remorse is a legitimate factor for this court to consider in determining what sentence is necessary to "protect the public from further crimes of the defendant" as one who shows little remorse is more likely to re-offend while one who

shows extreme and genuine remorse is less likely to re-offend. *See, 18 USC § 3553(a)(2)(C).*

### Role of Defendant

The presentence report assesses a three-level enhancement for role in the offense under USSG § 3B1.1(b). That assessment is technically accurate and therefore the defendant has not objected to it, but we do ask the Court to consider the reality of the relationship between the parties. Mr. Ashley was plainly among the least culpable actor in this offense, but the artificial structure of the guidelines does not adequately allow for the unique nature and circumstances of this offense. Therefore, we ask the Court to give full consideration to the nature and circumstances of this offense when arriving at a just punishment. *18 USC § 3553(a)((1).*

### Full Array of Sentence Options Open to Court

After *Booker* the full array of sentencing options are available to the Court. Using its discretion guided by the principles of sentencing set forth in 18 USC § 3553 the court may adopt what ever sentence it believes is reasonable and appropriate to accomplish the congressional goal of a sentence that is sufficient, but not greater than, necessary to comply with the purposes of sentencing set forth by Congress. The Court is limited only by its imagination and sense of justice, guided by Congressional intent.

Mr. Ashley understands that the Court must impose an appropriate punishment. Given the unique nature and circumstances of this offense, the history and characteristics of this defendant, and statutory factors set forth in 18 USC § 3553(a)(2) — (6), Mr. Ashley respectfully requests that the Court impose a sentence of home confinement. Such a sentence would allow Mr. Ashley to continue to work and support

10

his family, allow him to earn money that could be used to pay restitution to the victims of this offense, allow him to address the medical and psychological needs identified in the presentence report, and would provide continuity of child care for Mr. Ashley's children.

If the Court concludes that a period of home confinement demeans the seriousness of the offense or is otherwise inappropriate, Mr. Ashley respectfully asks the Court to consider a community based confinement option that would allow Mr. Ashley to continue to work, support his family, and earn money for restitution but that would require Mr. Ashley to be incarcerated locally (at a county jail, half-way house, or community base corrections facility) when not working.

Finally, if the Court concludes that a period of imprisonment is necessary and appropriate in this case Mr. Ashley respectfully asks that the Court consider all of the factors set forth in this memorandum as well as the presentence investigation report and select a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 USC § 3553.  While the advisory guidelines range is a factor that the Court must consider, the Court may and should also consider the statutory factors set forth in this memorandum.  We respectfully suggest to the Court that when the Court considers all of those factors the Court will conclude that even a guidelines range sentence of 51 months is greater than necessary, and will adjust the sentence accordingly.

Respectfully,
*/s/Richard A. Cline*
Richard A. Cline [0001854]
**Richard Cline & Co., LLC**
580 South High St., Suite 200
Columbus, OH 43215-5644
Tel:  (614) 224-4114
Fax: (614) 224-3804

RCline@AttorneyCline.Com
**Counsel for Mr. Ashley**

## CERTFICATE OF ELECTRONIC FILING

I hereby certify that the foregoing motion was prepared and will be submitted for electronic filing on April 12, 2006 and thus will be served on all counsel of record on that date via electronic service.

_/s/Richard A. Cline_____